IN THE INTERMEDIATE COURT OF APPEALS OF WEST VIRGINIA

FILED

June 7, 2024

ASHLEY N. DEEM, DEPUTY CLERK
INTERMEDIATE COURT OF APPEALS
OF WEST VIRGINIA

**KRISTY D. WINLAND,**
**Claimant Below, Petitioner**

**v.)**  **No. 23-ICA-199**  (WorkForce W. Va. Bd. of Rev. Case No. R-2023-0245)

**CAMDEN-CLARK MEMORIAL HOSPITAL,**
**Employer Below, Respondent**

**and**

**WORKFORCE WEST VIRGINIA,**
**Respondent Below, Respondent**

**MEMORANDUM DECISION**

Petitioner Kristy D. Winland appeals the April 24, 2023, decision of the WorkForce West Virginia Board of Review ("Board") which reversed the decision of the Board's administrative law judge ("ALJ"). The Board determined that Ms. Winland committed gross misconduct which led to the termination of her employment and, as a result, that Ms. Winland was not eligible for unemployment compensation benefits. Respondents WorkForce West Virginia ("WorkForce") and Camden-Clark Memorial Hospital ("Camden-Clark") filed responses.[1] Ms. Winland filed a reply. The issue on appeal is whether the Board erred in reversing the ALJ's decision that WorkForce and Camden-Clark failed to meet their burden of proving that Ms. Winland was ineligible for unemployment compensation benefits.

This Court has jurisdiction over this appeal pursuant to West Virginia Code § 51-11-4 (2022). After considering the parties' oral and written arguments, the record on appeal, and the applicable law, this Court finds that there is error in the Board's decision, but no substantial question of law. Therefore, this case satisfies the "limited circumstances" requirement of Rule 21(d) of the Rules of Appellate Procedure. For the reasons set forth below, the decision of the Board is reversed and remanded for further proceedings consistent with this decision.

---

[1] Ms. Winland is represented by Walt Auvil, Esq. and Kirk Auvil, Esq. Camden-Clark is represented by Brian M. Peterson, Esq. WorkForce West Virginia is represented by Kimberly A. Levy, Esq.

Ms. Winland worked for Camden-Clark as a full-time registered nurse in the OB/GYN department from March 7, 2011, to December 30, 2022. Ms. Winland's job duties required direct care of patients at Camden-Clark. According to the administrative record, Ms. Winland's position was safety sensitive, and she had no performance based disciplinary actions taken against her while she was employed by Camden-Clark. The administrative record also indicates Camden-Clark has a drug-free workplace policy that prohibits illegal drug use.

On December 15, 2022, Paul Schindler, an employee in Camden-Clark's human resources department, received a text message from Ms. Winland which stated the following:

> It's Kristy
>
> Heyyyy stranger, it's your favorite sister in law Kristy!!!!
>
> Can you please hook a sister up today with an 8

Mr. Schindler forwarded the text message to others in the human resources department, who arranged a drug screening for Ms. Winland the following day, December 16, 2022.

Ms. Winland arrived at work on December 16, 2022, and was met by hospital staff who escorted her to the drug screening. According to the record, Ms. Winland failed an initial drug screening taken at the hospital and then again failed a second, primary test that was analyzed at an outside facility. Ms. Winland's drug screening was positive for methamphetamine and fentanyl,[2] among other controlled substances.[3] Pursuant to the drug screening results, Ms. Winland was discharged from her employment at Camden-Clark.

Ms. Winland filed an application for unemployment compensation benefits on January 15, 2023. A WorkForce West Virginia Deputy issued a decision dated January 27, 2023, finding that Ms. Winland committed gross misconduct pursuant to West Virginia Code Section 21A-6-3(2) (2020) when she reported to work under the influence of a controlled substance. Pursuant to this finding, Ms. Winland was determined to be ineligible for unemployment compensation benefits until she returned to employment for

---

[2] According to West Virginia Code § 60A-2-206 (2018), methamphetamine and fentanyl are Schedule II drugs.

[3] Ms. Winland's drug screen also detected amphetamines. Ms. Winland testified that she had a valid prescription for Adderall, which is an amphetamine, but did not present the prescription at the hearing.

at least thirty (30) days. Ms. Winland appealed the Deputy's decision to a WorkForce West Virginia ALJ.

A telephonic ALJ hearing was held on February 23, 2023. Ms. Winland and Tonya Cline, a human resources representative from Camden-Clark, testified. Ms. Winland denied that she sent the text message to Mr. Schindler. Ms. Winland explained that she speaks with her sister-in-law often, that her sister-in-law has Ms. Winland's phone number as a contact, and that Ms. Winland would not need to identify herself by name once, let alone twice, in a text message. Ms. Winland also testified that, apart from amphetamines, she did not consume or take any of the drugs listed as positive on the secondary testing. Ms. Winland explained that she is prescribed Adderall which is an amphetamine. She further questioned the results of the screening because benzodiazepine was not listed as positive despite her prescription for clorazepate, and because the results do not detail the drug levels found within the specimen or how the specimen was handled after the screening was administered. Ms. Winland testified that she was given the opportunity to have the specimen sent to another facility for re-testing at her cost, but that she declined because she was concerned the specimen was not hers and because she could not afford the cost due to her potential job loss.

Ms. Cline testified that she was not present for the drug test and did not witness Ms. Winland's demeanor. According to Ms. Cline, she interpreted Ms. Winland's text message as a solicitation for illegal drugs, and she arranged a drug test for Ms. Winland the next day, December 16, 2022. Ms. Cline testified that the screening entailed a preliminary test performed at the hospital. If the preliminary test is positive, the sample is forwarded to another facility for secondary testing. A secondary testing takes approximately two weeks for results. According to Ms. Cline, Ms. Winland's preliminary test was positive for controlled substances, and her sample was forwarded for secondary testing. In the meantime, Ms. Winland was suspended from duties pending results of the testing.

According to the administrative record, a second, primary test was performed at Quest Diagnostics of Norristown, Pennsylvania. The results were verified by the facility on December 28, 2022, and positive for amphetamines, D-methamphetamine, fentanyl, L-methamphetamine, methamphetamine, norfentanyl, and norfentanyl (fentanyl metab). Ms. Cline testified that she informed Ms. Winland of the results on December 30, 2022, and she also notified Ms. Winland that her employment at Camden-Clark was terminated. Ms. Cline testified that she forwarded Camden-Clark's drug-free workplace policy to Ms. Winland on the day of her termination.

On March 3, 2023, the ALJ issued a decision reversing the Deputy's decision that Ms. Winland was disqualified for unemployment compensation benefits. The ALJ determined that the record lacks any showing that Ms. Winland was impaired at work on December 16, 2022. He also questioned the validity of the test, noting that the test was negative for benzodiazepine despite Ms. Winland's prescription for clorazepate. The ALJ

concluded that Ms. Winland did not commit misconduct when she was discharged. Therefore, Ms. Winland qualified for unemployment compensation benefits. The ALJ did not address Camden-Clark's drug-free workplace policy.

Camden-Clark appealed the ALJ decision to the Board, which issued a decision dated April 24, 2023, reversing the ALJ's findings. The Board determined it was reasonable to conclude that Ms. Winland was under the influence of controlled substances on December 16, 2022, because the drug screen was administered near to Ms. Winland's work hours and reflected a positive result for controlled substances without a prescription. According to the Board, Camden-Clark is a safety sensitive employer; therefore, it was not required to wait and observe signs of impairment before terminating Ms. Winland's employment. The Board observed that waiting for signs of impairment could place patients' safety at risk. Finally, the Board noted the dangers of Fentanyl in particular. The Board determined that Ms. Winland committed gross misconduct while working at Camden-Clark and was disqualified from unemployment benefits. Again, Camden-Clark's drug-free workplace policy was not specifically addressed or analyzed by the Board. Ms. Winland appeals the Board's April 24, 2023, decision to this Court.

In appeals from the Board, our standard of review is as follows:

> The findings of fact of the Board of Review of [WorkForce West Virginia] are entitled to substantial deference unless a reviewing court believes the findings are clearly wrong. If the question on review is one purely of law, no deference is given and the standard of judicial review by the court is de novo.

*Taylor v. WorkForce W. Va.*, 249 W. Va. 381, __, 895 S.E.2d 236, 241 (Ct. App. 2023) (alteration in original) (quoting Syl. Pt. 3, *Adkins v. Gatson*, 192 W.Va. 561, 453 S.E.2d 395 (1994)).

On appeal, Ms. Winland raises five (5) assignments of error in which she argues the Board erred when it found she committed gross misconduct and was ineligible for unemployment compensation benefits. However, this Court need only address two (2) issues to resolve Ms. Winland's appeal: (1) Did the Board commit error when it determined Ms. Winland was under the influence of an unprescribed controlled substance on December 16, 2022? and (2) Did the ALJ and Board properly address Camden-Clark's drug free workplace policy?

If an employee is terminated for gross misconduct, the employee is disqualified from unemployment compensation benefits until he or she regains employment for at least thirty (30) days. *See* W.Va. Code § 21A-6-3(2). West Virginia Code Section 21A-6-3(2) also lists specific instances of employee behavior that are considered gross misconduct, three of which are relevant to this case: reporting to work in an intoxicated condition or being intoxicated at work; reporting to work under the influence of any controlled

4

substance, as defined in West Virginia Code chapter 60A; and violating an employer's drug or alcohol-free workplace policy.

The Board determined that Ms. Winland reported to work under the influence of a controlled substance for which she did not have a prescription. WorkForce argues that Ms. Winland's mere appearance at work with controlled substances in her system reflects she was under the influence. The Board findings echo WorkForce's argument; it also stated that Camden-Clark was not required to observe physical impairment because Ms. Winland worked in a safety sensitive position. However, "under the influence" arguably implies impairment to an individual's normal functioning, and no evidence was presented that Ms. Winland was under the influence of a controlled substance without a valid prescription when she arrived at work on December 16, 2022.

Ms. Cline did not witness Ms. Winland's demeanor on December 16, 2022, and neither WorkForce nor Camden-Clark offered any evidence that Ms. Winland was showing signs of physical or mental impairment on December 16, 2022, that might have affected her ability work with ordinary care.[4] Moreover, neither WorkForce nor Camden-Clark offered evidence about the expected effects on mental or motor control functions when an individual's drug test results are similar to Ms. Winland's. Therefore, the Board was clearly wrong when it determined that sufficient evidence was presented to prove that Ms. Winland arrived at work on December 16, 2022, under the influence of a controlled substance.

On the other hand, Camden-Clark argues that Ms. Winland committed gross misconduct because she violated its drug-free workplace policy when she tested positive for controlled substances without a prescription. However, the Board did not sufficiently review or discuss Camden-Clark's drug-free workplace policy or make a specific, independent finding that Ms. Winland violated its drug-free workplace policy.[5] It found

---

[4] The Supreme Court of Appeals of West Virginia recently defined "under the influence" in the context of driving while intoxicated. It determined that a person is under the influence "if the person 1) consumed, used, took, or ingested alcohol, controlled substances, or drugs and 2) the alcohol, controlled substances, drugs, or any combination thereof impaired the person's ability to operate a motor vehicle with ordinary care." Syl. Pt. 4, *Casto v. Frazier*, 248 W. Va. 554, 889 S.E.2d 276 (2023). While *Casto* is not an unemployment compensation case, it may offer guidance in the unemployment compensation setting. We believe clarification would be helpful as to whether policymakers intend a determination of "under the influence," for the purpose of denying unemployment compensation benefits, to require a specific finding of substantial impairment (from alcohol, controlled substances, or any combination thereof) or some other finding.

[5] The Board's April 24, 2023, decision merely stated that Ms. Winland was discharged by Camden-Clark for violating its drug-free workplace policy, but the Board

5

that Ms. Winland arrived at work on December 16, 2022, under the influence of a controlled substance without a prescription.

Nevertheless, the administrative record indicates Camden-Clark has a drug-free workplace policy, and Camden-Clark makes a strong argument that Ms. Winland violated its drug-free workplace policy when she tested positive for controlled substances without a prescription on December 16, 2022.  Therefore, we to remand this matter back to the Board on the issue of whether Ms. Winland violated Camden-Clark's drug-free workplace policy, with instructions that it accept evidence and arguments from all parties regarding the drug-free workplace policy and whether Ms. Winland violated the same.  The Board shall then issue a new decision on this issue with appropriate findings of facts and conclusions of law.

Accordingly, we reverse and remand with instructions.

Reversed and Remanded.

**ISSUED:** June 7, 2024

**CONCURRED IN BY:**

Chief Thomas E. Scarr
Judge Charles O. Lorensen
Judge Daniel W. Greear

---

did not base its holding on the drug-free workplace policy violation clause in West Virginia Code § 21A-6-3(2).